WILLIAM E. GAGEN, JR. CSB #043832
Gagen, McCoy, McMahon, Koss, Markowitz & Raines
A Professional Corporation
279 Front Street
P.O. Box 218
Danville, CA 94526
Telephone: (925) 837-0585
Facsimile: (925) 838-5985

Attorneys for Defendant
ELI MATTHEW GILBERT

UNITED STATES OF AMERICA

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.: CR 10-00796-02-DLJ |
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| vs. | |
| ELI MATTHEW GILBERT, | Date: March 11, 2011 |
| Defendant. | Time: 10:00 a.m. |

## I. INTRODUCTION

Pursuant to a Plea Agreement filed under Federal Rule of Criminal Procedure 11(c)(1)(B), Eli Gilbert entered a plea of guilty to a violation of Title 18 USC 1343 and 2, Wire Fraud and Aiding and Abetting, and has agreed to provide substantial assistance to the Government. The United States Probation Office has prepared a Presentence Report (PSR) and concluded that the advisory United States Sentencing Guideline (USSG) in this case is Total Offense Level 14, Criminal History Category I. Mr. Gilbert requests that the Court adopt the agreement of the parties and determine that the advisory Guideline is Total Offense Level 16, Criminal History Category I.

Without consideration of a motion by the United States pursuant to USSG 5K1.1,

- 1 -
DEFENDANT'S SENTENCING MEMORANDUM
F:\CLWEG\50772\Defendant's Sentencing Memorandum.doc

the PSR has recommended that the Court sentence Mr. Gilbert to three years probation, conditioned on the payment of a $100 special assessment and the performance of 500 hours of community service. In light of all of the sentencing factors in Title 18 USC 3553(a), as well as any motion by the United States, Mr. Gilbert requests that the Court adopt the recommendation of the Probation Officer.

## II. BACKGROUND

Born in Hawaii, his mother's home state, 38 year old Eli Gilbert was raised primarily in the East Bay. He completed two years of community college and then entered Fresno State University. Both his parents are Stanford University graduates, as is Eli's younger sister, who is presently studying nursing at Yale University. While he was in college, three of Eli's close friends tragically died in auto accidents within a short period of time. Eli has admitted that he lost motivation for school and returned home. He went to work in 1994 for Wells Fargo Bank. Ten years later, after ascending to branch manager for Wells Fargo, he moved to the Bank of America and became the San Ramon branch manager.

During elementary school, Eli developed a friendship with David Baumgartner. They became best friends. Friendship to Eli has been extremely important. His loss of three friends at an early age was devastating to him. His friendship with Baumgartner was important to him. In fact, they each "stood up" at one another's weddings, vacationed together, and socialized frequently.

At about the time that Eli was appointed Bank of America branch manager in San Ramon in 2004, his close friend David Baumgartner opened his business, West Coast Home Finance, a mortgage brokerage firm. The two young men pursued their careers, with Eli thoroughly enjoying his work in banking. During late 2005, Eli was contacted by David, who told him that he had a loan package with a short time frame within which to complete the application and that the client needed to have a deposit at Bank of America verified. Eli knew that BofA policy required that such verifications be done by a central office. He also knew that process took considerable time. At David's request, Eli

- 2 -
DEFENDANT'S SENTENCING MEMORANDUM
F:\CLWEG\50772\Defendant's Sentencing Memorandum.doc

Law Offices of
**GAGEN,
MCCOY,
MCMAHON,
KOSS,
MARKOWITZ
& RAINES**
A Professional
Corporation
279 Front Street
Danville, CA
94526
(925) 837-0585

confirmed the deposit and agreed to verify it for David's client. The verification was correct, but outside regular BofA procedures.

Over time, David made similar subsequent requests, with which Eli complied for his friend. At one point, however, David requested a verification of a deposit that was at variance with what Eli discovered about the account. Eli questioned David, who reassured Eli that the discrepancy was not material, as the loan was an "as stated" application. Eli, suspending his own judgment in the interest of helping his friend, agreed to verify the deposit, despite the fact that it was misrepresented. Eli did this a number of times, until the end of 2006, at which time he refused to continue the process. Throughout the time that Eli provided the verifications of deposit, he received nothing in return from David, other than his friendship that Eli valued. In September 2007, Eli was asked about the verifications by bank officers and admitted his conduct and resigned from the bank.

The false verifications by Eli constitute the only blemish on his life. He has worked regularly since leaving college in 1994 and is presently the office manager at a construction company. Previously married, he has an 8 year old daughter, to whom he is very close and for whom he provides regular child support. Eli's present wife, Lily, a pediatric nurse at Oakland Children's Hospital, is pregnant with their first child and is due to deliver in June 2011.

Eli has taken complete responsibility for his conduct. He has fully informed the Government of all information he has regarding his offense behavior and has cooperated to the best of his ability. He recognizes the gravity of his conduct and accepts the consequences, including the loss of the career he valued so much. He has learned a very difficult lesson from this experience.

### III.  APPLICABLE SENTENCING LAW

*United States v. Booker*, 160 L. Ed. 2d 621, 125 S.Ct. 738 (2005), renders the Guidelines as advisory only, and instructs the sentencing courts to consider the Guidelines in context of all of those factors enumerated in Title 18 USC 3553(a). The

Law Offices of
**GAGEN, MCCOY, MCMAHON, KOSS, MARKOWITZ & RAINES**
A Professional Corporation
279 Front Street
Danville, CA
94526
(925) 837-0585

Court found that the mandatory application of the Guidelines was unconstitutional. After applying the standards enumerated in 3553(a), the sentencing court's decision will then be reviewed for 'unreasonableness.'"

> . . . Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." *Booker*, at 660-661.

The Supreme Court addressed the issue of the "presumption of reasonableness" of a within Guidelines sentence in *Rita v. United States*, 551 S.Ct. 338, 127 U.S. 2456, 168 L.Ed. 2d 203 (2007) and instructed that a within Guideline sentence is presumed reasonable only upon **appellate review**. The Court stated:

> "We repeat that the presumption before us is an appellate court presumption. Given our explanation in Booker that appellate "reasonableness" review merely asks whether the trial court abused its discretion, the presumption applies only on appellate review. The sentencing judge, as a matter of process, will normally begin by considering the presentence report and its interpretation of the Guidelines. *18 U.S.C. § 3552(a); Fed. Rule Crim. Proc. 32*. He may hear arguments by prosecution or defense that the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines, to apply, *USSG § 5K2.0*, perhaps because the Guidelines sentence itself fails properly to reflect *§ 3553(a)* considerations, or perhaps because the case warrants a different sentence regardless. See *Rule 32(f)*. Thus, the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure. *See Rules 32(f), (h), (i)(1)(C) and (i)(1)(D)*, see also *Burns v. United States*, 501 U.S. 129, 136, 111 S. Ct. 2182, 115 L.Ed. 2d 123 (1991)* (recognizing importance of notice and meaningful opportunity to be heard at sentencing). In determining the merits of these arguments, the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply. *Booker*, 543 U.S. at 259-260, 125 S.Ct. 738, 160 L. Ed. 2d 621." at 351.

Further, the Court instructed:

> "The fact that we permit courts of appeals to adopt a presumption of reasonableness does not mean that courts may adopt a presumption of unreasonableness. Even the Government concedes that the appellate courts may not presume that every variance from the advisory Guidelines is unreasonable." at 354.

The Ninth Circuit reiterated this premise in *United States v. Edwards*, 595 F.3d 1004, 1015 (9th Cir. 2010) ([Court] cannot presume a sentence is substantively

DEFENDANT'S SENTENCING MEMORANDUM
F:\CLWEG\50772\Defendant's Sentencing Memorandum.doc

unreasonable only because it falls outside the range recommended by the Sentencing Commission).

Indeed, in *Irizarry v. United States*, 128 S.Ct. 2198, 2202, 171 L.Ed. 2d 28 (2008), the Court ruled that a variance from the sentencing Guideline range did not even require notice to the parties.

The Ninth Circuit was heard on the presumption of reasonableness and directed that even on appeal the presumption of a Guideline sentence may not be reasonable. It stated:

> ". . . A court of appeals may not presume that a non-Guidelines sentence is unreasonable. Although a court may presume on appeal that a sentence within the Guidelines range is reasonable, *id*, we decline to adopt such a presumption in this circuit." *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008).

The Guideline range is simply the beginning of the analysis for sentencing, not the end. The Ninth Circuit stated:

> "'The Guideline's factor may not be given more or less weight than any other.' So while the Guidelines are the 'starting point and initial benchmark' and must 'be kept in mind throughout the sentencing process,' the Guideline's range constitutes only a touch-stone in the district court's sentencing consideration." *United States v. Autery*, 555 F.3d 864, 8172 (9th Cir. 2009)

The 9th Circuit has directed the sentencing court to accurately calculate the Guidelines, it may then determine if there are any justifiable departures from the Guidelines, and then consider the Guidelines as but one factor among all of the factors outlined in Title 18 USC 3553(a), to reach a reasonable sentence. *United States v. Menyweather,* 431 F.3d 692, 696 (9th Cir. 2005), reprinted as amended at 447 F.3d 625, 630 (9th Cir. 2006). See, also, *Carty, id* at 991-994.

The Court must now consider 18 USC 3553(a) in its entirety and impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The court, in determining the particular sentence to be imposed, shall consider –

(1) The nature and circumstances of the offense and the history and

DEFENDANT'S SENTENCING MEMORANDUM

F:\CLWEG\50772\Defendant's Sentencing Memorandum.doc

Law Offices of
**GAGEN, MCCOY, MCMAHON, KOSS, MARKOWITZ & RAINES**
A Professional Corporation
279 Front Street
Danville, CA
94526
(925) 837-0585

characteristics of the defendant;

   (2)   The need for the sentence imposed --

      (a)   to reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense;

      (b)   to afford adequate deterrence to criminal conduct;

      (c)   to protect the public from further crimes of the defendant; and

      (d)   to provide the defendant with needed education or vocational training, medical care or other correctional treatment in the most effective manner;

The sentencing court is now required to consider factors that the Guidelines effectively prohibited from consideration (ie: Age, USSG 5H1.1; Education and Vocational Skills, USSG 5H1.2; Mental and Emotional Condition, USSG 5H1.3; Physical Condition Including Drug or Alcohol Dependence, USSG 5H1.4; Employment, USSG 5H1.5; Family Ties and Responsibilities, USSG 5H1.6; Socio-economic Status, USSG 5H1.10; Civic and Military Contributions, USSG 5H1.11; and Lack of Youthful Guidance, USSG 5H1.12.). *United States v. Ameline*, 409 F.3d 1073, 1093 (9th Cir. 2005) (en banc). To consider the "history and characteristics of the defendant," the Court must now consider factors the Guidelines eschewed.

Finally, the Supreme Court has cautioned that respect for the law is promoted in many ways, not always measured by the strictness of sentences or the nature of harsh sanctions. The Court stated:

> ". . . Moreover, the unique facts of Gall's situation provide support for the District Judge's conclusion that, in Gall's case, "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall, id.*, at 599.

In order to meet the mandate of the *Booker* remedy, then, this court must calculate the appropriate guidelines range and may consider appropriate departures. It must also apply the 3553(a) factors and address any other specific characteristics of the defendant or his offense that might impact the determination of a "reasonable" sentence under the

DEFENDANT'S SENTENCING MEMORANDUM

F:\CLWEG\50772\Defendant's Sentencing Memorandum.doc

Law Offices of
**GAGEN,
MCCOY,
MCMAHON,
KOSS,
MARKOWITZ
& RAINES**
A Professional Corporation
279 Front Street
Danville, CA
94526
(925) 837-0585

particular circumstances of this case. The court must then consider the statutory parsimony provision and impose a sentence "sufficient, but not greater than necessary to comply with the purposes set forth in [§3553(a)(2)."] The district court's sentencing decision will then be subject to an abuse-of-discretion review by the circuit. See, *United States v. Treadwell,* 593 F.3d 990, 999 (9th Cir. 2010) (reversal is appropriate only if district court's sentence is "illogical, implausible, or without support in inferences that may be drawn from facts in the record.")

## IV. A REASONABLE SENTENCE

In considering the nature and circumstances of the offense, as indicated in the "Justification" section of the PSR's recommendation, Eli Gilbert had no role in designing this scheme. It was created by others. He received no benefit from his actions, as he acted out of a misplaced sense of loyalty to a childhood friend. Realizing that his conduct was inappropriate, Eli absented himself from the scheme and refused to cooperate further in 2006. When confronted by bank officials, he immediately admitted his conduct and resigned from the bank. Since he was interviewed by investigators, he has cooperated fully. These factors suggest a sentence of probation.

The history and characteristics of Eli Gilbert likewise suggest that a sentence of probation is appropriate in this case. He has no prior record and his conduct during the over four years since he voluntarily ceased his involvement in this scheme has been blemish free. He has returned to his fully law abiding lifestyle. He is gainfully employed as a construction office manager, is married, and is about to become a father for a second time. He presents no threat of recidivism.

Eli Gilbert's role in this offense, his background and current circumstances, his full acceptance of responsibility, and his cooperation with authorities, all indicate that a sentence of probation, conditioned upon the performance of meaningful community service, as suggested by the PSR, is reasonable. Incarceration is not necessary to protect the public and probation adequately reflects the seriousness of Eli's involvement in this offense. The collateral consequence of the loss of his cherished career is a strong

Law Offices of
**GAGEN,
MCCOY,
MCMAHON,
KOSS,
MARKOWITZ
& RAINES**
A Professional
Corporation
279 Front Street
Danville, CA
94526
(925) 837-0585

message and a deterrent to both Eli and others.

Therefore, it is respectfully requested that the Court sentence Eli Gilbert to three years probation, upon the conditions that he pay a $100 special assessment and perform 500 hours of community service.

Dated: February 28, 2011

Respectfully submitted,

GAGEN, MCCOY, MCMAHON, KOSS, MARKOWITZ & RAINES
A Professional Corporation

By: /s/
WILLIAM E. GAGEN, JR.
Attorneys for Defendant
Eli Matthew Gilbert